IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ANTHONY ALTMAN                                                    PLAINTIFF

            v.                    Civil No. 07-3001

JERRY LOGGINS, Sheriff;
and BRIAN STOCKTON,
Jail Administrator                                               DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Anthony Altman brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. While he was an inmate of the Searcy County Detention Center, Altman contends his constitutional rights were violated in the following ways: (1) he was denied access to the courts; and (2) he was subjected to unconstitutional conditions of confinement.

Defendants filed a motion for summary judgment (Doc. 12). To assist plaintiff in responding to the summary judgment motion, I entered an order (Doc.17), directing Altman to complete, sign, and return an attached questionnaire that would serve as his response to the summary judgment motion. Altman filed a timely response to the court's questionnaire (Doc. 18). The case is currently before the undersigned for the issuance of a report and recommendation on the summary judgment motion.

## I.  BACKGROUND

Altman was booked into the Searcy County Detention Center (SCDC) on August 11, 2004, on charges of aggravated assault, simultaneous possession of drugs and firearms, manufacturing of a controlled substance, and possession of firearms by a person who has been

-1-

convicted of a felony. *Response* (Doc. 18)(hereinafter *Resp.*) at ¶ 1. The pending charges were the sole reason he was incarcerated. *Id.* at ¶ 2.

A felony information and bench warrant were filed in the Searcy County Circuit Court on August 12, 2004, in Criminal Case No. 2004-71 against Altman. *Resp.* at ¶ 3. He was arraigned on August 16, 2004, and a surety bond of $45,000 set by the Circuit Judge. *Id.* at ¶ 4. He posted bond that day and was released from the SCDC. *Id.* at ¶ 5.

On July 13, 2006, an order to forfeit his bond was issued based on Altman's failure to appear. *Defendants' Exhibit* 1 at pages 5-6 (hereinafter *Defts' Ex.*). Altman maintains that he and his co-defendant, Mr. Howard, had always had the same court dates and Mr. Howard had been told there would be no court on July 13th. *Resp.* at ¶ 6.

On September 26, 2006, a bench warrant was issued in Criminal Case No. 2004-71. *Resp.* at ¶ 7. On September 26, 2006, Altman was arrested and detained at the SCDC. *Id.* at ¶ 8. He remained incarcerated at the SCDC until he was released pursuant to a judge's order on December 11, 2006. *Id.* at ¶ 9.

Altman had a bunk or a mattress to sleep on each night at the SCDC. *Resp.* at ¶ 10. Although, two months of the time he spent at the SCDC, he spent on the floor with a mattress. *Id.* at ¶¶ 10 and 11.

When not confined in the cells, Altman had access to a day-room. *Resp.* at ¶ 12. Altman maintains the cells were too crowded to perform exercises such as sit-ups, or push-ups. *Id.* at ¶ 13. He indicates at times there were as many as five men assigned to two men cells. *Id.*

Altman was also asked whether he could perform exercises in the day-room. *Resp.* at ¶ 13. He failed to answer this portion of the question. *Id.* The day-room was approximately

-2-

eighteen feet by twelve feet. *Id.* at ¶ 14.  There were perhaps twelve to fifteen inmates in the day-room at one time. *Id.*  There was a television in the day-room and a shower off to the side. *Id.*

According to Altman, there were many times they were locked in their cells due to the fact there was only one female jailer on duty. *Resp.* at ¶ 14.  Altman indicates they never knew when, or if, they could go to the day-room because at times they were locked in their cells for days at a time. *Id.*  On one occasion, Altman indicates there were four inmates in his cell and for four days they were not allowed to leave the cell. *Id.*

Altman indicates he was in the cell called the drunk tank. *Resp.* at ¶ 15.  It was approximately ten feet by ten feet in size. *Id.*  It contained two metal bunks, a toilet, and a sink that did not work. *Id.*  Generally, there were three or four inmates assigned to all cells. *Id.*  Altman indicates the other cells were approximately six feet by eight feet in size. *Id.*  He asserts that many days were spent in lock-down. *Id.*  Meals were passed through a small window in the cell door. *Id.*

With respect to the meals he received, Altman maintains that many of the meals were unfit for human consumption. *Resp.* at ¶ 16.  He indicates breakfast was usually white rice with no sugar or milk. *Id.*  Prior to getting the Hurricane Katrina relief meals that were expired, Altman indicates they were receiving small TV dinners that were not nutritious but were eatable. *Id.* at ¶ 17.  He indicates they were not receiving any fruit, milk, or fresh vegetables. *Id.*

When they received the Hurricane Katrina relief meals, Altman indicates the meals had passed the expiration dates by seven months. *Resp.* at ¶ 19.  He also denies that the meals were supplemented with extra calories including fruit. *Id.* at ¶ 19 & ¶ 20.  He states there was no fruit

AO72A
(Rev. 8/82)

or vegetables. *Id.* He indicates he personally saw the expiration dates on the cases of relief meals and on the bottom of the dinner dish as well as the expiration date on the juices. *Id.* at ¶ 21.

He states he lost about thirty pounds in three months. *Id.* at ¶ 16. In September, Altman indicates he weighed 141 pounds. *Id.* In December, he indicates he weighed 118 pounds. *Id.*

With respect to clothing, because he was small, 5'4" and only 140 pounds, Altman indicates there were few clothes that fit. *Resp.* at ¶ 18. Many times Altman states there were no replacement clothes available. *Id.* The clothing that was available was torn and ripped. *Id.*

With respect to outside exercise, Altman maintains he was only let out for fifteen minutes every two weeks. *Resp.* at ¶ 28. He indicates Brian Stockton made the decisions about outside exercise. *Id.*

With respect to not being monitored by the jailers, Altman states being in close quarters and being locked down in the cell could lead to "fights within cells as was one in my cell." *Resp.* at ¶ 30. He indicates they did install cameras over the toilets in the cells around November of 2006. *Id.*

Altman had an attorney representing him on his criminal charges although he didn't believe he had "council of any substance." *Resp.* at ¶ 25. He did not miss any deadlines for filing any documents with the court. *Id.* at ¶ 27.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio*

-4-

*Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. DISCUSSION

Defendants have now moved for summary judgment. First, they contend the complaint should be construed as asserting official capacity claims only as Altman has failed to specify in what capacity he is suing them. Second, as there is no evidence of an unconstitutional custom or policy, they maintain they are entitled to judgment as a matter of law on all claims. Third, they maintain Altman was not denied access to the courts, knew the charges against him, and was allowed to, or could have, spoken to his attorney any time he wanted to. Fourth, they contend there is simply no evidence to support Altman's claims that he was subjected to unconstitutional conditions of confinement. Finally, they maintain Altman's claims are barred by the physical

AO72A
(Rev. 8/82)

injury requirement of the Prison Litigation Reform Act.  We will address each argument separately.

### *(1) Official versus Individual Capacity Claims*

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).   The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983.  *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986).

Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities.  In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits.  As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991).  Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24-27, 112 S. Ct. at 361-62 (1991).  Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and

qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25-27, 112 S. Ct. at 362.

*Gorman*, 152 F.3d at 914.

The Eighth Circuit has consistently advised plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice of potential personal liability. *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). *See also Andrus v. Arkansas*, 197 F.3d 953 (8th Cir. 1999)(In actions against officers specific pleading of individual capacity is required to put public officials on notice they will be exposed to personal liability). When the plaintiff fails to state whether he is suing an official in his individual capacity, the Eighth Circuit has construed the claim to be against the official in his official capacity only. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."); *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 620 (8th Cir. 1995)("*Nix* requires that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities. Neither a cryptic hint in a plaintiff's complaint nor a statement made in response to a motion to dismiss is sufficient.").

A review of the complaint in this case shows that plaintiff has failed to specifically plead whether the individually named defendants were being sued in their official or individual capacity. However, the court has an obligation to liberally construe a pro se complaint. *Haines v. Krener*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). *See also White v. Wyrick*, 530

-7-

F.2d 818, 819 (8th Cir. 1976)(finding pro se petition should be "interpreted liberally and . . . should be construed to encompass any allegation stating federal relief").  In so doing, we must keep in mind that the plaintiff is without legal expertise and he prepared his own pleading. *Bracken v. Dormire*, 247 F.3d 699, 704 (8th Cir. 2001).  For this reason, we construe Altman's complaint to be asserting both individual and official capacity claims.

As noted above, official capacity claims are the equivalent of claims asserted against Searcy County.  Under § 1983, a governmental entity may not be held vicariously liable for the unconstitutional acts of employees. However, a governmental entity, here Searcy County, may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional policy or custom.  *Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir.1998).

Thus, Searcy County would be liable for defendants' conduct only if it had a policy or custom that caused plaintiff's injury. *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997).  In the absence of a written policy, plaintiff must identify a pattern of widespread unconstitutional conduct that was so pervasive and well-settled that it had the effect of law.  *See Jane Doe A v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 646 (8th Cir. 1990).  Plaintiff must show that the County "through its deliberate conduct ... was the 'moving force' behind the injury alleged."  *Brown*, 117 S. Ct. at 1388.

"[I]naction or laxness can constitute government custom if it is permanent and well settled." *Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 807 (8th Cir. 1994)(citation omitted). "Such a government custom of laxness or inaction must be the moving force behind the constitutional violation." *Id.*  A governmental body may also be held accountable based on a

-8-

failure to train and supervise adequately under certain circumstances. *City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

When asked if a custom or policy of Searcy County was the moving force behind the constitutional violations he alleges. Altman responded: "Yes." *Resp.* at ¶ 31.  He was then asked to describe in detail the custom or policy and how it operated to deprive him of his federal constitutional rights.  He responded:  "Not only were my rights violated but many were much worse being held in legal limbo." *Id.*

Clearly, any suggestion of the existence of a basis to hold Searcy County liable is wholly lacking.  There is simply nothing from which we could conclude a genuine issue of fact exists as to the County's liability.  Defendants are therefore entitled to summary judgment on the official capacity claims.

### (2) Access to Courts/Access to Counsel

"Inmates undeniably enjoy a constitutional right of access to the courts and the legal system." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996)(*citing*, *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2174, 2179, 135 L. Ed. 2d 606 (1996); *Bounds v. Smith*, 430 U.S. 817, 821, 97 S. Ct. 1491, 1494-95, 52 L. Ed. 2d 72 (1977)).  In *Myers,* the Eighth Circuit stated that:

> [t]o protect that right, prisons must provide inmates with some access to legal materials or to legal assistance so that inmates can prepare and pursue complaints, and with some ability to mail these complaints and related legal correspondence once prepared. Inmates do not have a right, however, either to law libraries or to unlimited stamp allowances for legal mail.  Instead, the duty to make such arrangements is bounded by the inmates' right of meaningful access to the courts.  To state a claim that a law library or legal assistance program violates this right, inmates must assert that they suffered an actual injury to pending or contemplated legal claims.  Alleging theoretical inadequacies is insufficient.  Inmates must instead show, for example, that a complaint that they prepared was dismissed due to a technical requirement that a library's

> inadequacies prevented them from knowing, or that a library was so inadequate
> that it prevented them from filing a complaint for actionable harm at all.

*Myers*, 101 F.3d at 544 (citations omitted).

In *Cody v. Weber*, 256 F. 3d 764 (8th Cir. 2001), the Eighth Circuit noted that the

Supreme Court in *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) and

*Bounds v. Smith*, 430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977), "determined that the right

of access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally

attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it

does not extend to the right to 'discover grievances' or to 'litigate effectively once in court.'"

*Cody*, 256 F. 3d at 767-68 (*quoting Lewis*, 518 U.S. at 354-55).

In this case, Altman's claim fails because he has suffered no actual injury.  Although he

did not believe he was represented effectively, he had an attorney representing him in his

criminal case and he missed no deadlines for filing any documents with any court.  *Resp.* at ¶¶

25 & 27.  *See Klinger v. Department of Corrections*, 107 F.3d 609, 617 (8th Cir. 1997) (to

prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of

access to library is complete and systematic).   Although "[p]ro se defendants have a right of

access to adequate law libraries or adequate assistance from persons trained in the law," *United

States v. Knox*, 950 F.2d 516, 519 (8th Cir. 1991)(quotations omitted), the right is not an abstract

one and the inmate must "demonstrate that the alleged shortcomings . . . hindered his efforts to

pursue a legal claim." *Lewis*, 518 U.S. at 351.

While Altman alleges generally that inmates were often left in the SCDC for months

before understanding their charges or speaking to their public defender, when asked to respond

to specific statements about the inmates being allowed to meet with their counsel, by checking agree, disagree, or without knowledge or agree or disagree, he responded to each question by checking that he was without knowledge to agree or disagree. *See* ¶ 22 (The SCDC allowed all inmates to meet with their attorneys, public defenders included, anytime the attorney requested to meet with their inmate clients); and ¶ 23 (Your attorney could have seen you anytime he or she wanted and was never refused the right to see you).

A claim that an individual's constitutional rights have been violated is regarded as personal in nature. *See Broadrick v. Oklahoma,* 413 U.S. 601, 610-11, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973); *United States v. Mitchell,* 915 F.2d 521, 526 n. 8 (9th Cir. 1990). Ordinarily, one individual cannot assert a claim on behalf of another individual. *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997)("While a non-attorney may appear pro se on his own behalf, '[h]e has no authority to appear as an attorney for others than himself.'"). Altman does not allege his attorney was prevented from seeing him or that he was personally unaware of the charges against him.

### (3) Conditions of Confinement

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

AO72A
(Rev. 8/82)

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendants' conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). *See also Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard applies to claims brought by pretrial detainees that prison officials failed to provide adequate food, clothing, shelter, etc.). Keeping these principles in mind, I turn to an examination of the conditions of confinement alleged to exist in this case.

-12-

### (A).  Diet Inadequate to Maintain Health

The Eighth Amendment's prohibition against cruel and unusual punishment is violated if an inmate is not provided with meals adequate to maintain his health.  *See e.g., Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996); *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992)(prisoners have a right to nutritionally adequate food); *Campbell v. Cauthron*, 623 F.2d 503, 508 (8th Cir. 1980)(prisoners are guaranteed a reasonably adequate diet).   To prevail on an Eighth Amendment claim Altman must show the defendants were deliberately indifferent to his dietary needs.  *Wishon v. Gammon*, 978 F.2d 446 (8th Cir. 1992).

Merely because the food is served is not prepared to an inmate's taste does not implicate the Eighth Amendment.  Rather, the Eighth Amendment is only violated if the food provided is inadequate to maintain good health.  *See e.g., Burgin v. Nix*, 899 F.2d 733, 734-35 (8th Cir. 1990)(inmates do not have a right to be served a particular type of food).  *See also Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)(the deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measure of life's necessities).

Altman identifies numerous inadequacies in his diet while he was at the SCDC.  He states he was not given fresh fruit, fresh vegetables, or milk, many meals were unfit for human consumption, and once they began receiving Hurricane Katrina relief meals those meals were expired and could not be eaten and contained no fruit or vegetables.  *Resp.* at ¶¶ 16, 17, 19, 20. He maintains he lost thirty pounds in three months.  *Resp.* at ¶ 16.  Given this significant weight

-13-

loss, we believe there are genuine issues of fact as to whether Altman was provided with an adequate diet.

### (B).  Sleeping on the Floor

No constitutional violation is stated when a detainee is required to sleep on the floor when he is provided with a mattress.  *See e.g., Ferguson*, 88 F.3d at 650 ("Nor is the use of a floor mattress for thirteen nights, when viewed in the totality of the circumstances, a violation of Ferguson's due process rights."); *Roop v. Squadrito*, 70 F. Supp. 2d 868, 874 (N.D. Ind. 1999)(Requiring inmate to "sleep on a floor mattress for an extended period of time would be a lay-down case for the defendants since several courts in this circuit have found that the failure to provide an inmate with a bunk is not a constitutional deprivation.")(citations omitted); *Hines v. Sheahan*, 845 F. Supp. 1265, 1269 (N.D. Ill. 1994)("[R]equiring an inmate to sleep on a mattress on the floor does not itself rise to the level of a constitutional violation."); *Powell v. Cook County Jail*, 814 F. Supp. 757, 759 (N.D. Ill. 1993)("'[N]othing in the Constitution requires elevated beds for prisoners.'" (citations omitted)).

### (C).  Opportunities for Exercise

A constitutional violation exists if prison officials are deliberately indifferent to an inmate's exercise needs.  *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992).   A "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened."  *Id.*  Among factors the court should consider in reviewing such a claim are:  (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement.  *Id.*

-14-

Here, Altman contends there was inadequate room in his cell to do exercises such as push-ups or sit-ups. *Resp.* at ¶ 13. However, he had access to a day-room when he was not locked down in his cell. *Id.* at ¶ 12. The day-room was eighteen feet by twelve feet in size. *Id.* at ¶ 14. The longest period of time Altman was locked in his cell without access to the day-room was four days. *Id.* Furthermore, in addition to having day-room access when not locked in his cell, Altman received outside recreation for fifteen minutes approximately once every two weeks. *Id.* at ¶ 28.

This does not demonstrate a deprivation serious enough to violate the Eighth Amendment. *See e.g., Rahman X v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)(thirty-seven days without being allowed to exercise did not constitute an atypical and significant hardship in the context of normal prison life); *Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001)("short-term denials of exercise may be inevitable in the prison context."); *Leonard v. Norris*, 797 F.2d 683, 685 (8th Cir. 1986)(fifteen days of no out-of-cell exercise not cruel and unusual punishment); *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992)(45 minute out-of-cell recreation time per week did not violate the Eighth Amendment rights of inmate in protective custody). Additionally, there is no indication Altman suffered any physical injury as a result of the lack of exercise.

**(D). Interference with Mail**

Altman was asked if he could send and receive legal mail. *Resp.* at ¶ 24. He responded: "Mr. Howard had to send copies pages of U.S. Const. and Jail design and policy manual that I

-15-

had, 5 times to get pages that were removed by SCDC.  A letter to Ark. Dem. Gaz. was given to Judge Reynolds rather than newspaper."  *Id.*

Altman was also asked if he was able to send and receive personal mail.  *Resp.* at ¶ 26. He responded that he was without knowledge to agree or disagree.  *Id.*  He then wrote:  "My Mom never got her 2 letters."  *Id.*

Inmates have a First Amendment right of free speech to send and receive mail.  *Hudson v. Palmer*, 468 U.S. 517, 547, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984).  "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment."  *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125, 97 S. Ct. 2532, 53 L. Ed. 2d 629 (1977).

"The First Amendment does not compel prison officials to provide indigent prisoners with unlimited free postage and materials for non-legal mail."  *Van Poyck v. Singletary*, 106 F.3d 1558, 1159-1560 (11th Cir. 1997).  In fact, it has been said that "indigent inmates have no constitutional right to free postage for nonlegal mail."  *Hershberger v. Scaletta*, 33 F.3d 955, 956 (8th Cir. 1994).  With respect to legal mail, the courts have upheld limits on legal mail so long as the inmate's First Amendment right to access to the courts is not infringed.  *See e.g., Bell-Bey v. Williams*, 87 F.3d 832, 838-839 (6th Cir. 1996)(meaningful access provided when indigent prisoners are allotted ten stamps per month and additional postage may be loaned to prisoners); *Hershberger v. Scaletta*, 33 F.3d 955, 956 n. 2 (8th Cir. 1994)("nor do we interpret the decision to say that no limits may be imposed on inmates desiring to make more than one legal mailing a week.") .

-16-

Restrictions on this First Amendment right are valid "only if it is reasonably related to legitimate penological interests." *Turner v. Safely*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). "[E]conomic factors may . . . be considered . . . in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial." *Bell-Bey*, 87 F.3d at 838 (*citing Bounds v. Smith*, 430 U.S. 817, 824-25, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977)). When a policy regulates outgoing mail, the policy must "'further an important or substantial government interest unrelated to the suppression of express,' and must not limit First Amendment freedoms 'greater than is necessary or essential to the protection of the particular governmental interest involved.'" *Bell-Bey*, 87 F.3d at 838 (*quoting Procunier v. Martinez*, 416 U.S. 396, 413, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974)).

Here, Altman does not contend there was a limit placed on the number of legal or personal letters an inmate could mail at his own expense. Nor does he challenge a regulation that places a specific limit on the amount of postage available to indigent prisoners for legal mail. It is not clear from his response whether he contends his own legal mail was interfered with or that of Mr. Howard, his co-defendant in his state criminal case. *Id.* at ¶ 24. Altman does not suggest he was prevented from sending mail to an attorney, court, or a party in pending litigation. *Id.*

Inspection procedures, such as scanning legal mail for docket numbers, case titles, requests for documents, etc., that are limited to determining if the mail in question constitutes legal mail have been upheld. *See e.g., Bell-Bey v. Williams*, 87 F.3d 832, 836-838 (6th Cir. 1996). It has been held that limiting postage expense furthers a substantial interest, managing limited prison resources, unrelated to expression. *Id.* at 838. States are not required "to pay the

-17-

postage on every item of legal mail each and every prisoner wishes to send." *Twyman v. Crisp*, 584 F.2d 352, 359 (10th Cir. 1978). Thus, ensuring free postage is used for pending litigation including mail to courts, or attorneys, does not violate the rights of prisoners so long as the prisoner is not denied access to the courts. *Hoppins v. Wallace*, 751 F.2d 1161, 1162 (11th Cir. 1985)("The constitutional right to access to the courts entitles indigent prisoners to some free stamps as noted in *Bounds* but not unlimited free postage as is urged by the plaintiff."); *Bryan v. Werner*, 516 F.2d 233, 239 (3rd Cir. 1975)("Letters of this type, not being directed to the courts, may be restricted. Furthermore, the counselors may examine the outgoing petitions for the purposes of determining whether they are entitled to free postage, for keeping abreast of the legal proceedings in which inmates are involved, or even for making constructive suggestions."). Here, nothing suggests Altman was denied access to the courts.

Furthermore, Altman has not suggested that Jerry Loggins or Brian Stockman were involved in the removal of material from the legal mail or redirecting the letter to the Arkansas Democrat Gazette to Judge Reynolds. *Resp.* at ¶ 24. Similarly, with respect to the two letters to his Mother, Altman does not indicate the defendants were responsible for the letters not getting to his Mother. In fact, when asked if he was able to send and receive personal mail, Altman responded that he was without knowledge to agree or disagree. *Id.* at ¶ 26. Section 1983 liability cannot be imposed on Loggins and Stockton merely because they employ or supervise the alleged wrongdoers. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)(A claim of deprivation of a constitutional right cannot be based on respondeat superior theory of liability.).

-18-

**(E).  Insufficient Staffing**

Altman contends his rights were violated by the inadequate level of staffing.  He maintains the inmates only saw the jailers a few times a day and the rest of the time the inmates were locked in their cells.  *Resp.* at ¶ 30.  Altman asserts this could have lead to fights.  *Id.*  In fact, he asserts there was one fight in his cell.  *Id.*  In November of 2006, Altman indicates cameras were installed over the toilets in the cells.  *Id.*

Altman does not contend he was harmed in the fight or that there was a pervasive risk or harm in the facility because of the under-staffing.  His allegations show that the SCDC officials may have acting unreasonably in failing to take measures to improve or increase the staffing at the facility.  However, this does not rise to the level of deliberate indifference to Altman's safety.  *See e.g., Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005)(allegations regarding inadequate records, overcrowding, poor supervision, and under-staffing showed at most that officials were negligent, which did not rise to level of deliberate indifference).

**(4) Physical Injury Requirement of the PLRA**

Codified as 42 U.S.C. § 1997e(e), section 803(d) of the Prison Litigation Reform Act of 1996 (PLRA), provides as follows:  "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

Defendants argue that Altman does not allege that he suffered any physical injury and thus § 1997e(e) bars his action.  I disagree.  Section 1997e(e) merely limits a prisoner's recovery in the absence of physical injury.  It does not bar the cause of action.  *See Royal v. Kautzky*, 375

AO72A
(Rev. 8/82)

F.3d 720, 723 (8th Cir. 2004)(discussing § 1997e(e)'s limitation on damages and its application to all prisoner lawsuits).   Even in the absence of a physical injury, a plaintiff may recover nominal damages and seek declaratory and injunctive relief where appropriate. *Id.* Furthermore, Altman maintains that as a result of the allegedly inadequate diet he lost thirty pounds in three months.

## IV.  CONCLUSION

I therefore recommend that the motion for summary judgment be granted in part and denied in part.  Specifically, I recommend that the motion be granted with respect to Altman's claim that he was denied access to the courts and his conditions of confinement claims with the exception of his claim that he was denied an adequate diet.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 23rd day of July 2008.

/s/ *J. Marschewski*

HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

-20-